UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA    )    DOCKET NO. 5:09-CR-27
                       )
      vs.          )
                       )
BERNARD von NOTHAUS,     )
                       )
         Defendant.    )
_____)

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE
JULY 19, 2010

<u>APPEARANCES</u>:

On Behalf of the Government:

    MARK ODULIO
    United States Attorney's Office
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina

On Behalf of the Defendant:

    AARON E. MICHEL
    Attorney at Law
    3736 Surry Ridge Court
    Charlotte, North Carolina

Cheryl A. Nuccio, RMR-CRR
Official Court Reporter
United States District Court
Charlotte, North Carolina

P R O C E E D I N G S

1

2    THE COURT:  The magistrate judge ordered the

3  defendant's bond revoked.  Defendant appealed.  It's now

4  before the court to determine whether he should be detained

5  pending the trial or whether he should be allowed bond.  In

6  other words, whether the magistrate judge's order should be

7  upheld or not.

8          Either side disagree with that proposition?

9          MR. ODULIO:  That's correct, Your Honor.

10         MR. MICHEL:  We agree, Your Honor.

11         THE COURT:  Would you offer -- you've made the

12  motion, Mr. Michel.  Would you be offering any evidence?

13         MR. MICHEL:  Your Honor, just what we've attached to

14  the motion.

15         THE COURT:  Right, I have seen everything that's

16  been filed.

17         MR. MICHEL:  And would just proffer that his

18  youngest son -- his youngest son Xtra is here today to show

19  the family support.  He flew in from California.  I've been in

20  contact with Mr. von NotHaus's mother in Florida.  She's very

21  supportive.  She was supportive in buying the plane ticket,

22  providing the resources to get here to answer up in magistrate

23  court, and continues to be supportive.  His family is very

24  supportive of him.  If there's some concern about ties to the

25  community as suggested by Judge Cayer's order in terms of his

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1    not being able to come here when required, he has the

2    resources through his family to be here when called upon to be

3    here.

4           That violation report created a substantial, you

5    know, burden, spending over a thousand dollars to come here to

6    answer to what appeared to me as well as Mr. von NotHaus to be

7    nothing new.  And I don't mean to be dismissive of -- if

8    somebody's got a concern, then I think it should be raised.

9    It should be discussed and addressed.  But the violation

10   report saying there's a Hawaii Dala website out there, that's

11   nothing new.

12          I don't want to waste the court's time rehashing

13   what we've already said, but he did arrange to be here for

14   that hearing to answer up to the court, to answer questions on

15   that.  He did answer up.  He waived his right to remain

16   silent, to take the stand, to answer the questions put to him

17   about that.  And he's very earnest and concerned about being

18   forthright with the court.

19          If the court had last year asked him to remove those

20   two websites, the Liberty Dollar website and the Hawaii Dala

21   website, both of which were in existence before the legal

22   proceedings began in this case and which the government knew

23   of.  And while I wasn't in the hearings last year, it's my

24   understanding that this court addressed the issue of at least

25   the Liberty Dollar website in last December's conference

                    Cheryl A. Nuccio, RMR-CRR (704)350-7494

1  because Mr. von NotHaus remembers that the court said you

2  wanted some things taken out of that Liberty Dollar website

3  and that's what they did.

4           I have reviewed the correspondence between

5  Mr. von NotHaus and his former counsel Deke Falls and Deke did

6  advise him what he needed to do and Mr. von NotHaus did comply

7  with that. And the tenor of that exchange was a desire by

8  Mr. von NotHaus to stay out of trouble and to abide by the

9  court's orders.

10          And the Hawaii Dala website is inactive. There's no

11  orders taken. He's not filled any orders. He's not filling

12  any orders on anything. He's out of that until this case is

13  resolved. And I hope and believe that it will be resolved

14  positively towards him and that the truth will be known that

15  these coins aren't counterfeit. They're a competitive private

16  barter currency that is legal under the Constitution. But he

17  understands that he needs to stand pat until that's resolved

18  and he's desirous of doing that and will comply with whatever

19  this court orders him to do to assure the court that there's

20  not going to be any problems.

21          I know that occasions there will be something in the

22  news, some part of the country about some community who likes

23  the Liberty Dollar and the media covers it. And the bottom

24  line -- it could go either way. It could be damning of

25  Liberty Dollar; it could be positive of the Liberty Dollar.

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1    And they've been positive that people see a value to having

2    something other than the U.S. currency to use.

3            But -- and the point I'm trying to make is that he's

4    never been cited in or been used in or participated in any of

5    that.  He's remained out of sight except for those websites

6    which have been in place well before I got involved and

7    everything on there was approved by Deke Falls.  If the court

8    wants that changed, he will make those changes.

9            THE COURT:  Well, I take it including taking the

10   websites down all together.

11           MR. MICHEL:  Yes, Your Honor.

12           THE COURT:  And there's never been a Tea Party

13   Dollar website as such; is that correct?

14           MR. MICHEL:  He party?  Oh, Tea Party website.  Not

15   to my knowledge, Your Honor.

16           THE COURT:  A Tea Party Dollar website.

17           We're talking about two websites and there's never

18   been a Tea Party Dollar website as such; is that correct?

19           MR. MICHEL:  Not by Mr. von NotHaus and he's not

20   involved with that.  Like I said, he wants to stay out of

21   trouble.

22           THE COURT:  But he -- there's chat that he is

23   receiving royalty checks from something.  Now, let's clarify

24   what that is.  It's from his copyright on the design, but what

25   unit of merchandise are we talking about?

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1              MR. MICHEL:  It's -- from my understanding, it's for

2  his design work of the Liberty head that did appear, I think,

3  on the Liberty Dollar; is that correct?

4              (Counsel and defendant conferred.)

5              MR. MICHEL:  And he informs me that there's no --

6  currently no royalties that -- what checks he did get he gave

7  to the probation office -- gave copies to the probation

8  office.  But there's no more checks coming in.  Apparently

9  that income is gone as far as he can tell.

10             THE COURT:  I mean, obviously, if there were royalty

11 checks coming in, that would imply that Liberty Dollars were

12 being sold; isn't that right?

13             MR. MICHEL:  Well, I believe Liberty Dollars are

14 being used, but he's not involved with that.

15             THE COURT:  I'm talking about any new sales, current

16 sales.

17             MR. MICHEL:  He did receive the design work checks

18 from Silver Liberty Marketing for commemorative works.  And if

19 the court wishes to order him not to do any design work

20 whatsoever for anything, then he'll comply with that.

21             But if you look at the court's order, not to

22 circulate any currency or coin not produced by the mint.  He's

23 not circulated or produced or minted anything.  That design

24 work that he did -- what was the last design work you did?

25             (Counsel and defendant conferred.)

                Cheryl A. Nuccio, RMR-CRR (704)350-7494

1          MR. MICHEL:  He did design work last year and none

2     this year, and that's apparently why the checks have stopped.

3     Unless the government's having conversations with that guy and

4     taking issue with the Tea Party medallions.  Which I have to

5     say, I can understand why the court would want him not to be

6     involved with things that are medallions or commemorative work

7     that from my view clearly isn't counterfeit, clearly isn't

8     illegal, but because he's charged with something in that neck

9     of the woods, then he's ordered to stay away from it.  I

10    understand that part of it.

11         And -- so what I'm trying to say is I don't think

12    they can go after whoever is dealing with the Tea Party

13    medallions because there's nothing illegal about them.  And

14    the artwork he did for this company was done last year and

15    he's received some checks from last year and some checks I

16    think this year, but from what I understand, the checks have

17    stopped because apparently there's nothing there for him.

18         If the court wants to order him to take down the two

19    websites, not be involved with any websites and to not provide

20    any design services, then he's willing to do that, Your Honor,

21    because he does intend to not be a problem for the court

22    pretrial.

23         THE COURT:  All right.

24         MR. MICHEL:  And I would just point out, he does

25    have very close ties to his family.  On the way up here his

                    Cheryl A. Nuccio, RMR-CRR (704)350-7494

1    son rode with me and he was telling me about how each year he
2    would spend two months with his two boys traveling to see
3    every state in this country.  And when they finished doing
4    that, they started spending time in South America doing some
5    travels for two months in South America.  One time to Spain
6    where their mother is from.  But he has very strong ties to
7    the community and he does have those relationships that will
8    get him here whenever the court needs for him to be here.

9          THE COURT:  All right.  Thank you.  We'll hear from
10   the government.

11         MR. ODULIO:  Your Honor, the government would
12   incorporate the argument both in the underlying detention
13   hearing as well as the motion it filed prior to the hearing,
14   Your Honor.  We would note that the magistrate court
15   considered the defendant's request to take down the websites,
16   but the linchpin in the magistrate court's judgment, Your
17   Honor, and decision was his view that no matter what order or
18   clarification was set by the court, that in the view of the
19   lower court, that there was no combination or conditions of
20   release that the defendant would abide by.

21         And I think, Your Honor, that's really highlighted
22   by the arguments of counsel.  For example, the government's
23   view is that the release conditions in this case have been
24   clear.  To the extent they needed clarification, there had
25   been clarification provided, Your Honor, and that

                    Cheryl A. Nuccio, RMR-CRR (704)350-7494

1  clarification has been unambiguous:  That the defendant be

2  prohibited from minting or producing any coinage or currency

3  and from circulating any coinage or currency that has not been

4  produced by the United States Mint.  As reflected in, I think,

5  the defendant's testimony, he acknowledged that he had a --

6  was receiving royalty.  He indicated that a part of his design

7  was being used in connection with the continued sale of some

8  of these items and Silver Liberty Marketing was the conduit

9  for that.  And the lower court, Your Honor, made findings of

10  that.

11        You may recall from the testimony below, the

12  defendant, Your Honor, acknowledged that on the Hawaii Dala

13  website itself, there was no place that an online order could

14  be made, but that it was -- there was no where for a consumer

15  to discern on the website that an order could not be placed.

16  And in fact, Your Honor, on the website there's contact

17  information for an order to be placed to include the name,

18  P.O. Box, and a phone number.

19        Prior to hearing, Your Honor, I directed my agent

20  here, Cody Muse, to do a search of the P.O. Box listed on the

21  Hawaii Dala website and what we got back is it comes back to

22  an individual named Liberty Dollar of Indianapolis, Allen

23  McConnell, and that's P.O. Box 2105, Indianapolis, Indiana

24  46206, which, Your Honor, just demonstrates that this Hawaii

25  Dala is not independent of the Liberty Dollar that is being

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1  distributed by this individual Allen McConnell who is somehow

2  associated with Liberty Dollar of Indianapolis.

3          In addition, Your Honor, counsel indicated that

4  there was no more -- or there was no Tea Party Dollar website.

5  However, again, this morning we were able to print off from

6  the Liberty Dollar website a page that deals with the Tea

7  Party Dollar.

8          And, Your Honor, may I approach?

9          THE COURT:  Yes.

10         MR. ODULIO:  And again, the agent printed this off

11  this morning.  We'd highlight the last page of the document,

12  Your Honor, which says, "Now, could you imagine if those

13  fumbling bunch of idiots, a/k/a FBI, raided the Liberty Dollar

14  just in time to confiscate the politically expressive Tea

15  Party Dollar like they did the Ron Paul Dollar.  Obviously, it

16  is impossible to mistaken the Tea dollar for a counterfeit

17  U.S. dollar that is solidly protected by the First Amendment."

18         In addition, Your Honor, although this was not a

19  subject at the detention hearing below, in preparation for the

20  hearing, again, I had the agent conduct a search and he found

21  the website related to Mr. von NotHaus called Free Marijuana

22  Church of Honolulu.  May I approach, Your Honor?

23         THE COURT:  Yes.

24         MR. ODULIO:  And again, Your Honor, we highlight

25  this because we want to, I think, Your Honor, amplify the

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1  magistrate court's determination that no matter what
2  conditions the magistrate court sets, that this defendant will
3  parse it and will not abide by it.  As the court is aware, the
4  defendant is prohibited -- or is required to not commit any
5  other crime while he's on release.  There is --
6        THE COURT:  Where do you see that this is associated
7  with Mr. von NotHaus apart from the fact that the search used
8  his name?
9        MR. ODULIO:  Your Honor, we -- the agent conducted a
10  domain search of who the registered owner of the website is
11  and that came back to Mr. von NotHaus.
12        May I approach, Your Honor?
13        THE COURT:  Right.
14        (The document was tendered to the court.)
15        MR. ODULIO:  Your Honor, I believe if you will read
16  through it, there is some reference to the Liberty Dollar
17  activities within the pages.  We'd just highlight, Your Honor,
18  on the sixth page of this document it says, "For that reason I
19  have smoked one toke of marijuana every Sunday for the past 12
20  years.  You might say I observe my special Sunday service
21  religiously every Sunday."
22        THE COURT:  Where are you reading?
23        MR. ODULIO:  From the website Free Marijuana Church,
24  Your Honor, I believe it's the sixth page, and it's the fourth
25  paragraph that starts with "For that reason."

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1          THE COURT:  So is this verbiage attributed to

2    Mr. von NotHaus?

3          MR. ODULIO:  I believe so, yes, sir.

4          THE COURT:  Well, you have it in front of you.  You

5    don't have to believe it.  You can actually point it out, can

6    you not?

7          MR. ODULIO:  Yes, sir.  Just a moment, Your Honor,

8    I'm sorry.

9          I have it here, Your Honor.  It's the eighth page,

10   Your Honor.

11         THE COURT:  Starting what?

12         MR. ODULIO:  It says -- there is a -- it's -- my

13   page, Your Honor, says, "Thank you for reading my story.  God

14   loves us all.  Bernard NotHaus.  High priest of Honolulu."

15         THE COURT:  All right.  I have page -- the eighth

16   page I have starts with "dwells within all of us."  Do you see

17   that?

18         MR. ODULIO:  Yes, sir.

19         THE COURT:  So where are you reading where it has

20   defendant's name?

21         MR. ODULIO:  It says "dwells within all of us."

22   Then the next paragraph, Your Honor, says "Thank you for

23   reading my story."

24         THE COURT:  Oh, I see.  All right.

25         MR. ODULIO:  "God loves us all."  And then it's

                 Cheryl A. Nuccio, RMR-CRR (704)350-7494

1   Bernard von NotHaus.

2         THE COURT: Right. Okay.

3         MR. ODULIO: Again, Your Honor, we would just close

4   with that. We're not suggesting that this conduct alone would

5   be a sole basis for violation of the defendant's condition.

6   We point to the entire record here from the initial order, the

7   conditions of release, to the clarification order sought and

8   obtained by the defendant in October, all the way through the

9   record developed at the hearing below; and that is, Your

10   Honor, whatever conditions of release are set by this court,

11   the defendant will parse and will, despite the evidence, posit

12   that he's not in violation. And based on that there are no

13   conditions or combination of conditions. We'd ask the court

14   to adopt the findings of fact and the conclusions of law by

15   Magistrate Judge Cayer.

16         THE COURT: All right. Well, this business with the

17   Free Marijuana Church of Honolulu article, as far as I can

18   tell, doesn't show any involvement on its own four corners

19   with currency or any arguable form of it.

20         MR. ODULIO: Yes, sir.

21         THE COURT: It does show that he's capable of

22   getting onto websites and saying things, but that doesn't -- I

23   don't believe that's the proper focus of this hearing.

24         MR. ODULIO: Your Honor, we just bring it up because

25   I believe it's part of the standard conditions of release that

1  he not violate any law or any additional law and we just

2  wanted to provide that to the court for the court's attention.

3  Your Honor, the focus on the inquiry all along has been the

4  currency, these issues, and we'd submit on that. I just

5  wanted to raise that and bring it to your attention.

6         THE COURT: I understand. And of course, it would

7  seem at minimum perplexing that a defendant with a pending

8  case would be associating himself with verbiage that appears

9  to argue for, promote or otherwise involve the defendant with

10 a movement, one aspect of which involves a substance which is

11 possession which is banned by federal law, if not the law of

12 several states.

13        But in any event, do you want to add anything,

14 Mr. Michel?

15        MR. MICHEL: Just that this website was created back

16 in 2008 and last updated, according to this, December 2009.

17 My client wishes to assure the court that he's not used any

18 marijuana while on pretrial supervision and the report of the

19 probation officer was that in all other respects he has

20 complied with the terms of probation. He's done everything

21 legal. He's not been doing marijuana, although it is legal by

22 doctor's prescription in Hawaii. But as the report says, he's

23 been compliant. The only question presented by the probation

24 officer was his discovery of this website, which is new to him

25 but not new to everybody else in this case.

      Cheryl A. Nuccio, RMR-CRR (704)350-7494

1           Thank you, Your Honor.

2           THE COURT:  All right.  Well, the court has, of

3  course, respect for its magistrate judges and their views of

4  these things, but the court's obligation here is to view the

5  matter de novo, which the court does.  The court finds that

6  defendant did violate the terms of his supervised release but

7  will hold those violations in abeyance and reinstate his bond

8  on the same terms it's had up until now -- or up until it was

9  recently revoked.

10          Now, do you understand, Mr. von NotHaus, that any

11  violation of your bond conditions that have existed up until

12  the hearing before Judge Cayer are going to be in effect from

13  now on?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And that any violation of those terms

16  and conditions will be undoubtedly met with concern by the

17  probation officer?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And the court will add a condition that

20  you not -- first of all, that you take down both the Liberty

21  Dollar and the Hawaii Dala websites.

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And that you not involve yourself with

24  any other website or enterprise which either appears or --

25  appears to promote any coin, currency, medallions,

                Cheryl A. Nuccio, RMR-CRR (704)350-7494

1   commemoratives or any other form of conceivable exchange.  Is

2   that broad enough?  Do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And the reason you were found in

5   violation is because you have continued to promote these

6   websites by posting, as I understand your materials, monthly

7   newsletters which, whatever they may say, necessarily promote

8   the Liberty Dollar or the Hawaii Dala as the case may be.  The

9   court is not concerned with the nomenclature that you use to

10  describe these vehicles, but you must think that some court at

11  least is lacking in intelligence when you make a fuss over how

12  there's no denomination shown on one of the coins and then you

13  come right out on your website and talk about it being a $50

14  piece.  That certainly suggests a value that you say should be

15  ascribed to it even if you haven't put it on the merchandise

16  itself.  I just cite that because violation is written all

17  over these activities that have been put in evidence before

18  the court.

19          THE DEFENDANT:  Sir...

20          THE COURT:  And it's obvious that you've been

21  skirting or attempting to skirt the court's order.  Well, I

22  just want you to be aware that the court is concerned with

23  direct obvious violations and also indiscreet, or otherwise,

24  efforts to skirt the violations or just barely avoid being in

25  violation.  The court is concerned about your ability to abide

Cheryl A. Nuccio, RMR-CRR (704)350-7494

1  by the law and stay out of custody while you're preparing your
2  case so that you can get a fair trial.
3            THE DEFENDANT:  Yes, sir.
4            THE COURT:  And that if you continue the kind of
5  behavior you've been engaging in, that you'll have to defend
6  yourself from the warm confines of the custody of the marshal.
7            Do you understand that?
8            THE DEFENDANT:  Yes, sir.
9            THE COURT:  So the order of bond is the same except
10 that -- for the additional term that I mentioned.
11           Any question from defense counsel as to what the
12 terms are?
13           MR. MICHEL:  No, Your Honor.
14           THE COURT:  Yes, sir.
15           MR. ODULIO:  One request, Your Honor.  The officer
16 informs me and I don't believe there is currently a drug
17 testing regimen in connection with the conditions of release
18 and we'd request that be added.
19           THE COURT:  So ordered.
20           MR. ODULIO:  Nothing further, Your Honor.
21           THE COURT:  That would be the usual regimen of
22 periodic or random testing according to the standard
23 conditions in effect in this district.
24           MR. ODULIO:  Yes, sir.  Thank you.
25           MR. MICHEL:  Thank you, Your Honor.

              Cheryl A. Nuccio, RMR-CRR (704)350-7494

```
 1                (End of proceedings at 2:50 p.m.)

 2                             *****

 3   UNITED STATES DISTRICT COURT

 4   WESTERN DISTRICT OF NORTH CAROLINA

 5   CERTIFICATE OF REPORTER

 6

 7

 8           I certify that the foregoing transcript is a true

 9   and correct transcript from the record of proceedings in the

10   above-entitled matter.

11

12           Dated this 31st day of January 2011.

13

14

15                             s/Cheryl A. Nuccio
                               Cheryl A. Nuccio, RMR-CRR
16                             Official Court Reporter

17

18

19

20

21

22

23

24

25

               Cheryl A. Nuccio, RMR-CRR (704)350-7494
```