UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:09CR27-V |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS UNDER RULES 29, 33 |
| (1) BERNARD VON NOTHAUS | ) | AND 34 OF THE FED.R.CRIM.PROC. |
| | ) | |
| | ) | |
| _____ | ) | |

NOW COMES the United States of America, by and through Anne M. Tompkins, United States Attorney for the Western District of North Carolina, and submits this Response in Opposition to Defendant's *Post-Conviction Motions Under Rules 29, 33, and 34 of the Fed. R.Crim.Proc.* (Doc. No. 197). For the reasons set forth below, Defendant's motions lack any support in law and should therefore be denied.

## PROCEDURAL BACKGROUND

On May 19, 2009, a federal grand jury sitting in the Western District of North Carolina returned a Bill of Indictment against Defendant and three co-defendants. (Doc. No. 3). Defendant von NotHaus (hereinafter "Defendant") was charged with violating Title 18, United States Code, Section 371 (conspiracy to violate 18 U.S.C. §§ 485, and 486), and substantive violations of Title 18, United States Code, Sections 1341, 485, 486, and 2. On November 17, 2010, the grand jury returned a Superseding Bill of Indictment against the same group of defendants. (Doc. No. 103). The Superseding Bill of Indictment charged Defendant along with co-defendants Innes, Bledsoe, and Moseley with violating Title 18, United States Code, Section 371 (conspiracy to violate 18, U.S.C.

1

§§ 485 and 486). Defendant and co-defendant Innes were also charged with substantive violations of Title 18, United States Code, Sections 485, 486, and 2.

On March 8, 2011, Defendant von Nothaus' jury trial on these charges began in Statesville, North Carolina (Defendant's case was severed from those of his co-defendants). During trial, the government presented approximately two days of evidence and rested its case on March 10, 2011. At that time, the Court denied Defendant's motion to dismiss the charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendant subsequently presented evidence to the jury for approximately four days. On March 17, 2011, the defense rested its case; after a single rebuttal witness testified for the government, the case was sent to the jury for deliberations which began on the morning of March 18, 2011. That same day, after less than two hours of deliberations, the jury returned a verdict finding Defendant guilty on all counts against him in the Superceding Bill of Indictment. The Court denied Defendant's renewed Rule 29 Motion at that time.

## DISCUSSION

Defendant now moves for relief from the jury verdict pursuant to Rules 29, 33, and 34 of the Federal Rules of Criminal Procedure. In his fifty-five-page political diatribe, Defendant essentially rehashes his theory of the case, takes issue with the factual testimony presented by government witnesses, and makes baseless and reckless allegations against government witnesses and prosecutors. Because Defendant fails to provide any basis supported in law to warrant relief under the Federal Rules of Criminal Procedure, his motions must be denied.

After considering approximately six days of testimony, the jury convicted Defendant of all charges against him in the Superceding Bill of Indictment (Counts One, Two and Three). First, the jury determined that Defendant violated Title 18, United States Code, Section 485 (Count Two),

under two separate avenues of proof. The jury was properly instructed by the Court at trial that the essential elements for the first avenue of proof under Section 485 were as follows:

    (1)    Defendant falsely made, forged or counterfeited coins; and

    (2)    The falsely made, forged or counterfeit coins were in resemblance and similitude of coins of a denomination of higher than five cents; or

    (3)    the falsely made, forged or counterfeit coins were in actual use and circulation as money within the United States; or

    (4)    the Defendant otherwise aided, abetted, counseled, commanded, induced, or procured the commission of this offense.

The jury also found Defendant guilty of violating Section 485 under a second avenue of proof. The jury was properly instructed by the Court that the essential elements for this avenue of proof under Section 485 were as follows:

    (1)    Defendant passed, uttered, published, sold, or possessed any false, forged, or counterfeit coins;

    (2)    Defendant did so knowing the coins to be false, forged or counterfeit; and

    (3)    The Defendant did so with the intent to defraud; or

    (4)    Defendant otherwise aided, abetted, counseled, commanded, induced, or procured the commission of this offense.

The jury also found that Defendant violated Title 18, United States Code, Section 486 (Count Three). The jury was properly instructed that the essential elements of this offense were as follows:

    (1)    Defendant knowingly made, uttered, or passed, *[or attempted to make, utter, or pass]*, coins of silver;

    (2)    The coins were in resemblance of genuine coins of the United States; or

    (3)    The coins were of original design; and

    (4)    The Defendant intended the coins for use as current money; or

(5) Defendant otherwise aided, abetted, counseled, commanded, induced, or procured the commission of this offense.

Finally, the jury found Defendant guilty of conspiring with others to violate these substantive statutes in further violation of Title 18, United States Code, Section 371 (Count One). The jury was properly instructed by the Court on the legal definitions of all terms relevant to the charges.

### *Federal Rule of Criminal Procedure 29*

Defendant moves, for the third time, for a dismissal of the charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure, alleging insufficient evidence. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shaver,* 651 F.2d 236, 238 (4th Cir. 1981) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Moreover, the government is entitled to the benefits of all reasonable inferences that can be drawn from the facts proven. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982). Reversal for insufficient evidence is reserved for the case "where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

The government presented substantial evidence at trial on each element of the charges for which Defendant was convicted. Ultimately, the evidence presented at trial showed that Defendant (1) designed and created counterfeit coins (Liberty Dollars) that resembled genuine coins of the United States; (2) instructed individuals on methods to inject the Liberty Dollar coins into the flow of current money by misleading people to believe that the coins were genuine U.S. coins; and (3) defrauded people by minting the Liberty Dollar coins with a dollar value that was in excess of the

true inherent value of the silver contained in the coins.

As an initial matter, Defendant had ample opportunity to cross-examine government witnesses at trial and to call witnesses and present evidence in his defense. Defendant did in fact conduct extensive cross-examinations of government witnesses and also presented a considerable amount of testimony and evidence to the jury on his behalf. Indeed, Defendant testified for approximately a full day of trial, called several witnesses who testified on his behalf and admitted hundreds of exhibits for the jury's consideration. Despite these efforts, the jury rejected Defendant's contentions and convicted him on all counts.

In his motion, Defendant seeks to again advance a nullification argument that failed to persuade the jury during the trial of this case. Specifically, Defendant engages in a wholly irrelevant discussion of "private currency barter systems" and contends that the government sought to paint a picture that private currency systems were illegal "in a subtle and deceptive way." (Def. Motion at 10). There was nothing subtle or deceptive about the government's presentation of the evidence and the government's contention that Defendant violated the laws of the United States, specifically Title 18, United States Code, Sections 485, 486 and 371. Defendant was not operating a "private currency barter system," rather, he was counterfeiting United States coins and using deceptive means to inject them into the flow of current money to defraud the public.

First, the government argued, and the jury agreed, that Defendant made and passed ***counterfeit coins*** that were in resemblance and similitude of United States coins in violation of 18 U.S.C. § 485. There can be no "legitimate" private currency system that functions through the private creation and distribution of counterfeit coins designed in resemblance and similitude of United States coins. That is precisely the activity prohibited by § 485.

With respect to the elements of the first avenue of proof under § 485, the evidence at trial established, among other things, that Defendant was the "Monetary Architect" of the Liberty Dollar and the Executive Director of NORFED/Liberty Dollar Services (hereinafter "NORFED"). In those roles, he caused the creation and distribution of the Liberty Dollar coins. These facts were not contested by Defendant at trial. Indeed, Defendant embraced the fact that he designed the Liberty Dollar coins and operated the business that implemented their distribution. Defendant, through NORFED, made Liberty Dollars available in three forms: coins, warehouse receipts, and eLiberty Dollars (Digital/Electronic Liberty Dollars). Despite Defendant's attempts to obfuscate the issue at trial, Defendant was only charged with illegal activities related to the Liberty Dollar <u>coins</u> and not his activities related to the warehouse receipts or the eLiberty Dollars. NORFED issued, exchanged, presented, uttered, and circulated five primary coins in the following denominations: one dollar, five dollar, ten dollar, twenty dollar, and fifty dollar.

The question as to whether the Liberty Dollar coins sufficiently resembled genuine United States coins per the element of the statute was put squarely to the jury and the jury determined that they did in fact resemble United States coins in violation of the statute. The jury had several occasions during trial to observe and inspect the Liberty Dollar coins and compare them to genuine United States coins. The government also presented the testimony of numismatic expert Brian Silliman, who testified regarding the characteristics of Defendant's Liberty Dollar coins and the characteristics of genuine United States coins. The evidence strongly supported the conclusion that the Liberty Dollar coins indeed were in "resemblance and similitude" of coins both of a denomination higher than five cents and those that were in actual use and circulation as money within the United States. As to the similitude issue, the evidence specifically showed the following:

(1) The Liberty Dollar coins of five, ten, twenty, and fifty dollars are engraved with the "$" (dollar sign), which signifies and is universally known as the symbol for the United States dollar. In addition, the word "dollar" is printed on the coins;

(2) United States coins in the denominations of dollar, half-dollar, quarter, dime and nickel are engraved with the phrase "In God We Trust"; Liberty Dollar coins of five, ten, twenty, and fifty "dollars" are engraved with the phrase "Trust in God";

(3) United States coins in the denominations of dollar, half-dollar, quarter, dime and nickel are engraved with the word "Liberty"; Liberty Dollar coins of five, ten, twenty, and fifty "dollars" are engraved with the word "Liberty";

(4) The dime of the United States is engraved with a burning torch. The one dollar coin of the United States is engraved with the Statue of Liberty holding a burning torch. Certain Liberty Dollar coins of five, ten, twenty, and fifty "dollars" are engraved with a burning torch;

(5) The one-dollar James Monroe coin of the United States is engraved with the Statue of Liberty. Liberty Dollar coins of five, ten, twenty and fifty "dollars" are engraved with a crowned head remarkably similar, if not exactly the same, as the crowned head on the Statue of Liberty;

(6) United States coins in the denominations of half-dollar, quarter, dime and nickel are silver in color. Liberty Dollar coins in the denominations of five, ten, twenty, and fifty "dollars" are silver in color;

(7) Liberty Dollar coins in the denominations of five, ten, twenty, and fifty "dollars" are engraved with the letters "USA".

(8) Numismatic expert Silliman provided the jury with size comparisons between the Liberty Dollar coins and genuine U.S. coins; and the jury was able to physically observe the similarities between the Liberty Dollar coins and several U.S. coins.

Further, the trial evidence established that Defendant, through his Liberty Dollar University seminars and other NORFED training materials, taught individuals associated with his organization to introduce the Liberty Dollar counterfeit coins into actual use and money within the United States. This proposition was supported by the Liberty Dollar training materials admitted through Special Agent Walsh at trial (G. Ex. 25) and the testimony of Defendant himself. Additionally, testimony

7

from Special Agents Romagnuolo, Walsh and Mueller established that Defendant did in fact distribute the Liberty Dollar coins into actual use throughout the country, and specifically into communities in Asheville, North Carolina, through the activities of co-defendant and Asheville RCO Kevin Innes. Defense witnesses Vernon Robinson, Jason Pratt, Richard Pitagora and Hank Lane also testified to the distribution of Liberty Dollar coins in communities throughout the United States.

As to the second avenue of proof under Section 485, the evidence clearly established that Defendant "passed, uttered, published, sold, and possessed" the Liberty Dollar counterfeit coins. Once again, this issue was not contested by Defendant at trial. The evidence showed that Defendant intended for the Liberty Dollar coins to be spent as a currency. The government presented a myriad of evidence to the jury to show that Defendant passed these coins with the intent to defraud. The primary evidence of Defendant's intent to defraud was the inherent counterfeit nature of the Liberty Dollar coins discussed above. Second, the government introduced a great deal of evidence of the business model and the policies and procedures Defendant implemented to cause the distribution of the Liberty Dollar coins into communities throughout the United States. The evidence established that NORFED, the Regional Currency Officers (RCOs), Liberty Dollar Associates, and member Merchants made a profit circulating the Liberty Dollar currency. NORFED sold the Liberty Dollar to RCOs, Associates, and Merchants at a price greater than the daily spot price of silver, but less than monetary denomination reflected on the currency's face value. NORFED's profit, therefore, was the difference between the value for which the silver minted in the coin was purchased and minted, and the price at which NORFED sold the coin. The evidence established that Liberty Dollar RCOs, Associates, and Merchants sold the Liberty Dollar at a price greater than they paid for it.

Thus, the profit for these individuals was the difference between their discounted purchase

8

price and the price for which they sold the coin or, in the Merchant's case, the value that they equalized it to U.S. currency when making change. A person who was not affiliated with NORFED paid the face value minted on the coin, a value determined by Defendant that was less than the inherent value of the silver in the coin at the time of minting and distribution.

The government also presented the jury with evidence of the techniques employed by Defendant and NORFED in promoting the use of the Liberty Dollar and injecting the coins into the flow of U.S. currency. Significantly, the government admitted a segment of the Learning Channel video that Defendant included in his Liberty Dollar training materials. (G. Ex. 25). This video features Defendant passing Liberty Dollar coins in transactions with two vendors. (G. Ex. 25C-1). While offering a Liberty Dollar coin to the first vendor to make a purchase, he states simply, "I have a ten dollar silver." When the vendor asks what it is, he says only, "it's the new ten dollar silver piece." When purchasing merchandise from a second vendor, Defendant again offers a Liberty Dollar coin and says, "I have the paper money, but have a new silver ten dollar piece."

Significantly, when making these purchases Defendant does not inform the vendors that the Liberty Dollar is a "private barter currency," and not U.S. currency; he does not inform the vendors that the Liberty Dollar represents a political statement on behalf of NORFED (National Organization for the Repeal of the Federal Reserve and the Internal Revenue Code); he does not inform the vendors that the "$10" marking on the Liberty Dollar coins reflect a denomination higher than the inherent value of the silver contained in the coin; he does not inform the vendors that the coins are not legal tender; and he certainly does not inform the vendors that the coins can only be used with others who are aware of, and agree to participate in, his own personal "private barter system." By identifying the Liberty Dollar coin simply as a "new ten dollar silver piece," coupled with the fact

9

that the Liberty Dollar coin strongly resembled U.S. coinage, Defendant used the Liberty Dollars as current money in a deceptive fashion, and Defendant used this example as a training device to teach others affiliated with his organization to do the same.

With respect to Defendant's violation of 18 U.S.C. § 486, the government argued, and the jury agreed, that Defendant made and passed coins of silver intended to be used as current money, whether in resemblance or similitude of coins of the United States or of original design. The evidence presented at trial was abundantly clear on this point. Again, Defendant did not contest the fact that he made, uttered and passed the Liberty Dollar coins; that was the admitted purpose of Defendant's organization.

The second requirement of section 486 is that the coins were in resemblance of genuine coins of the United States or of original design. As discussed above, substantial evidence was presented to the jury which established the element that the Liberty Dollar coins resembled genuine coins of the United States. Even if the jury had not found that Liberty Dollar coins resembled genuine coins of the United States (which they clearly did find by virtue of the conviction under 18 U.S.C. § 485), the defendant admitted at trial that the coins were of original design, which is also prohibited by the statute when the coins are intended to be used as current money. Despite Defendant's bombastic ranting to the contrary, section 486 means what it says: it is a violation of federal law to make, utter or pass "any coins of gold or silver or other metal, or alloys of metals, intended for use as current money, ***whether in the resemblance of coins of the United States or of foreign countries, or of original design***..."[1] The jury received a significant amount of evidence in support of this element

---

[1] 18 U.S.C. § 486 (emphasis added); *see also United States v. Gellman*, 44 F.Supp. 360, 364 (D. Minn 1942) ("[a] reading of these sections [referring to sections formerly identified as Title 18, U.S.C. §§ 281 (currently § 486) and 282] induces the view that they were primarily adopted to prevent

of the offense.

Finally, for reasons discussed above, the trial evidence strongly supported the contention that Defendant intended the coins for use as current money. Defendant's own training materials, including the Learning Channel video and the accompanying literature, demonstrate that Defendant trained RCOs and Liberty Dollar Associates to use the Liberty Dollars to purchase merchandise and to convince merchants to give the Liberty Dollar coins out to customers as change for purchases made at their places of business, i.e., as "current money" as that term was defined in the jury instructions.

Any argument that Defendant was simply confused or unaware that he was breaking the law was completely put to rest by the testimony of Dan Shaver, Chief Counsel for the U.S. Mint. Mr. Shaver testified that Defendant and the RCOs affiliated with the Liberty Dollar organization were sent letters from Mr. Shaver in September 2006, which advised them that representatives of the Department of Justice believed the activities related to the Liberty Dollar were in violation of federal law. The evidence showed that, after receiving this notice, Defendant continued to create and distribute the Liberty Dollar coins in the same manner as he did before the Mint warning was issued.

---

the coining of money in competition with the United States; resemblance or similitude is not necessarily an element. The United States has the sole power to coin money under the Constitution, and if anyone, individual or State, assumes to supplant the medium of exchange adopted by our Government, or assumes to compete with the United States Government in this regard, a violation of these statutes would follow. Undoubtedly, no one can interfere with the monopoly which this Government has obtained by reason of the Constitutional provisions without running afoul of these statutes. If one manufactures a coin, a five cent piece, for instance, in an oblong shape, and although much larger than a genuine five cent piece, for the purpose of circulation as money within any area of the United States, a violation would occur. But the intendment must be that the coin shall be 'for the use and purpose of current money under Section 281..."); *see also United States v. Falvey*, 676 F.2d 871, 876 (1st Cir. 1982) (considering section 486, the court stated that "...the primary concern of Congress seems to have been with the prohibition of private systems of coinage created for use in competition with the official United States coinage.") (citing *Gellman*, 44 F.Supp at 364).

11

Defendant was given ample warning and opportunity to cease his illegal activities before the government initiated criminal prosecution of this matter.

For the foregoing reasons, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could certainly have found the essential elements of the crimes charged against Defendant beyond a reasonable doubt. Therefore, Defendant's motion to dismiss pursuant to Rule 29 must be denied for the third time.

### *Federal Rule of Criminal Procedure 33*

Under Rule 33 of the Federal Rules of Criminal Procedure, the district court can grant a new trial on a motion of the defendant "if the interests of justice so require." Fed.R.Crim.Proc. 33. The Fourth Circuit Court of Appeals has held that "a district court should exercise its discretion to grant a new trial 'sparingly' and that the district court should grant a new trial based on the weight of the evidence 'only when the evidence weighs heavily against the verdict.'" *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir.1997) (quoting *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir.1985)). Only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment" should the court grant a motion for a new trial. *Arrington*, 757 F.2d at 1485.

Defendant has made no legitimate argument to warrant a new trial pursuant to Rule 33. Due to the rambling nature of Defendant's pleading, it is difficult to ascertain the specific issues that he believes support his Rule 33 motion; however, his general contention appears to be centered around an argument in defense of "private voluntary barter currency." Defendant's continued reliance on political platitudes opposing the Federal Reserve and in support of a "private voluntary barter currency" miss the mark entirely, and in no way support his motion for a new trial. Ultimately, the Court properly instructed the jury as to the law of this case, including the essential elements of the

12

offenses charged and the definitions of the terminology related to those offenses. As a result, the jury was in no way misled regarding the law of the case.

In his motion, Defendant seeks redress from the Court by repeatedly referring to his activities as "a competing private voluntary barter currency." In his conclusory paragraph, Defendant makes additional inflammatory and vituperative statements questioning the government's decision to prosecute him for his activities. (Def. Motion at 48). Specifically, he makes the outrageous comparison of this prosecution to "the white supremacist [who] used the criminal justice system to maintain control of African Americans." Further, he contends that "[t]he government is prosecuting those who disagree with its policy against private barter currency." As an initial point, making such an intellectually dishonest statement in a federal court pleading falls far below the level of professionalism that should be tolerated from members of the North Carolina Bar and any attorney practicing in the federal courts of the United States. The system deserves and demands far better from officers of the court. Further, Defendant's contention is patently absurd. The evidence at trial clearly demonstrated that the activities surrounding the creation and distribution of the Liberty Dollar were in no way a "competing private voluntary currency system," but rather constituted a deceptive and fraudulent scheme designed and implemented by Defendant.

First, if Defendant had truly desired to create an obvious "voluntary barter currency," he could have, and most certainly would have, designed a tradable item easily distinguishable from U.S. currency, i.e., a square silver ingot with "NORFED" or "I hate the Fed" stamped on one side and "1 oz. Silver" on the other, or any other number of designs that would have distinguished his pieces from U.S. coins. But that was not Defendant's intent. Defendant intentionally designed a round coin that included traditional characteristics of United States money: a profile of the Statue of Liberty;

13

the letters "USA"; the inclusion of the phrase "Trust in God"- a not so subtle rip off of the phrase "In God We Trust" which appears on all U.S. coins; the use of the dollar "$" sign to establish a denomination; and a burning torch; all in an obvious effort to deceive recipients of the Liberty Dollar and to increase the use and acceptance of his coins in commerce. Defendant's righteous indignation about his activity being viewed as illegal by the government is belied by his obvious efforts to design his Liberty Dollar coins in a way that enabled him to deceive people into believing that they were receiving genuine U.S. currency when they were not.

Further, if Defendant was truly seeking to engage in a "private voluntary barter system," it would seem that his methods of training others to use his "barter currency" would have been quite different. In his demonstration of how to use the Liberty Dollar coins in the Learning Channel video, Defendant did not explain the nature of his "barter currency" to the vendors. Defendant did not approach the vendors and say, "this is my own piece of 1oz. privately minted silver that I would like to trade with you, would you agree to accept it in place of U.S. currency?" Rather, he tried to sneak it past the vendors by using the ambiguous description "the new ten dollar silver piece," leaving the impression that it was genuine U.S. currency. Through this video, other training materials, and the Liberty Dollar University training seminars, Defendant taught his adherents to do the same. One would not need to conduct lengthy training seminars to teach people how to conduct an honest barter exchange of known commodities. One might, however, need to conduct lengthy training seminars to train people how to subtly pass a counterfeit coin and introduce it into the flow of currency through deceptive means.

Finally, any comparison of Defendant's creation and distribution of Liberty Dollar coins to localized private exchange systems such as the "Ithaca Hour" or "Disney Dollar" are absurd on their

14

face. The tradable "certificates" used in local private barter systems are in no way designed to be similar to U.S. currency in that they generally do not include characteristics of U.S. currency, but rather include features such as a waterfall or cartoon characters like Mickey Mouse. Most importantly, true private barter certificates include clear markings on their face which properly identify them and indicate that they are intended to be used for specified limited purposes (such as an exchange for an hour of work in the case of the Ithaca Hour), and they are not intended to be used as "current money," or a "competing currency." Given these drastic differences and the absence of deception, these local exchange systems are in no way analogous to the fraudulent activities engaged in by Defendant. For this reason, his inflammatory and unsupported assertions are misplaced and irresponsible.

Whatever Defendant's political motivation may have been in creating counterfeit money and distributing it as current money does not negate his criminal conduct. Defendant had a multitude of legal avenues available to him to express his political opinions and his dissatisfaction with the Federal Reserve: communicating with elected officials, submitting his opinions in writing in books, newspapers, journals and other periodicals; expressing his views through interviews with members of the media; organizing political efforts, etc. Instead, Defendant apparently chose to express his political views by counterfeiting U.S. currency and seeking to defraud people in violation of federal law. The relative merits of his political arguments, whatever they may or may not be, are irrelevant to the consideration of his illegal conduct. A defendant charged with drug distribution cannot seek refuge in a defense that he only dealt drugs to make a political statement against the drug laws; similarly, this Defendant cannot seek refuge from the charges against him by claiming that he only violated U.S. law to make a political statement against the Federal Reserve.

Mr. von NotHaus was prosecuted for violating the laws of the United States; nothing more and nothing different. Defendant engaged in a pattern of illegal behavior. He was warned about the illegal nature of his activities as they related to the Liberty Dollar in September 2006 and, despite this warning, he continued unabated and clearly relished the attention he received for doing so. Because he continued engaging in illegal conduct, Defendant was subsequently charged by a federal grand jury with violating the laws of the United States. Mr. von Nothaus asked for and received a fair trial before a duly constituted jury of his peers and was provided competent counsel to assist him in his defense at trial. The jury considered approximately six days of trial testimony, including the testimony of Defendant himself, and was provided with the proper legal instructions by the Court, before finding Mr. von Nothaus guilty of all charges. Simply put, Mr. von Nothaus was prosecuted for and convicted of violating the laws of the United States. There is no defect in the record of this case to support Defendant's contention that the interests of justice require a new trial of this matter.

### *Federal Rule of Criminal Procedure 34*

Last, Defendant moves pursuant to Rule 34 of the Federal Rules of Criminal Procedure for the court to arrest judgment on the basis that the Indictment fails to state an offense. Pursuant to Rule 34 of the Federal Rules of Criminal Procedure, "[t]he court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." Fed.R.Crim.Proc. 34. In making this motion, Defendant essentially attempts to relitigate arguments previously advanced in his pretrial motions seeking dismissal of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b). (Docs. No. 114 and 121). The government responded to those arguments in a written response filed with the Court on February 17, 2011 (Doc. No. 151) and the Court denied Defendant's motion on March 3, 2011.

Defendant has proffered no additional support for this motion since it was previously adjudicated. Because those issues have been fully and thoroughly addressed and disposed of by this Court, the government contends that Defendant has not stated any reason which would necessitate dismissal of the Indictment in the present case and his motion must be denied.

## CONCLUSION

For the foregoing reasons, the government contends that Defendant's *Post-Conviction Motions Under Rules 29, 33, and 34 of the Fed.R.Crim.Proc.* are unsupported by law and should therefore be denied.

RESPECTFULLY SUBMITTED, this 7th day of April, 2011.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

**s/ Craig D. Randall**
CRAIG D. RANDALL
JILL W. ROSE
Attorneys for the United States
CDR NC Bar Number: 26638
United States Attorney's Office
Suite 1700, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: 704.344.6222
Fax: 704.344.6629
E-mail: craig.randall@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of April, 2011, the foregoing document was electronically served upon Defendants at the following addresses:

| | |
|---|---|
| **Aaron E. Michel**<br>Attorney at Law<br>3736 Surry Ridge Court<br>Charlotte, NC 28210-6921<br>704/451-8351<br>Fax: 704/643-1004<br>Email: mail@aaronmichel.com | **Randolph Marshall Lee**<br>P. O. Box 77005<br>Charlotte, NC 28271<br>704-841-2222<br>Email: Randolph@LeeLaw.biz |
| **Claire J. Rauscher**<br>Federal Defenders of Western North Carolina<br>129 W. Trade Street<br>Suite 300<br>Charlotte, NC 28202<br>704-374-0720<br>Fax: 704-374-0722<br>Email: Claire_Rauscher@fd.org | **Erin Kimberly Taylor**<br>Federal Defenders of Western North Carolina<br>129 West Trade St.<br>Suite 300<br>Charlotte, NC 28202<br>704-374-0720<br>Fax: 704-374-0722<br>Email: Erin_Taylor@fd.org |
| **Joe VonKallist**<br>6743-A Fairview Road<br>Charlotte, NC 28210<br>704-366-9008<br>Fax: 704-365-2109<br>Email: joevonkallist@yahoo.com | **Matthew G. Pruden**<br>301 E. Park Avenue<br>Charlotte, NC 28203<br>704-338-1220<br>Fax: 704-338-1312<br>Email: mpruden@tinfulton.com |

                        ANNE M. TOMPKINS
                        UNITED STATES ATTORNEY

                        **s/ Craig D. Randall**
                        Assistant United States Attorney
                        NC Bar Number: 26638
                        United States Attorney's Office
                        Suite 1700, Carillon Building
                        227 West Trade Street

Charlotte, North Carolina 28202
Telephone: 704.344.6222
Fax: 704.344.6629
E-mail: craig.randall@usdoj.gov