# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DOCKET NO. 5:09CR27-V |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MOTION FOR LEAVE TO |
| | ) | FILE BRIEF AMICUS |
| BERNARD VON NOTHAUS, et al., | ) | CURIAE |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ ) | | |

On the grounds and for the reasons set forth below, Gold Anti-Trust Action Committee, Inc. ("GATA"), through undersigned counsel, moves this Court for leave to file a brief amicus curiae, no later than 10 days after entry of this Court's order granting such motion. GATA is an educational foundation exempt from federal income taxation under Internal Revenue Code section 501(c)(3), operating to study and educate the public concerning threats to a free market in gold, other precious metals, currencies, and related securities.[1] Prior to filing this motion, counsel for GATA contacted the parties. Counsel for Mr. von NotHaus consents, but the U.S. Attorney's Office opposes the motion.

---

[1] *See generally* http://www.gata.org/.

# I. THIS CASE PRESENTS A CONSTITUTIONAL MATTER AND STATUTORY ISSUE OF GREAT IMPORTANCE TO DEFENDANT AND OTHERS, INCLUDING THIS AMICUS CURIAE.

GATA has known of the prosecution and conviction of Bernard von NotHaus, but only recently became aware of the pending post-trial motions in this Court together with the way that the government has characterized the conviction and its consequences for the public. In response to Mr. von NotHaus's conviction, the United States Attorney for the Western District of North Carolina issued a press release in which she described Mr. von NotHaus's activities as "domestic terrorism," representing "a clear and present danger to the economic stability of this country." She further warned that the federal government would "meet these threats through infiltration, disruption and dismantling of organizations which seek to challenge the legitimacy of our democratic form of government."[2] Mr. von NotHaus was thus characterized as a revolutionary terrorist, with a broad-brush message delivered to other Americans who seek legitimate ways to protect themselves from what they deem to be destructive U.S. currency and monetary policies.

Additionally, not once does the press release state that Mr. von NotHaus was accused and convicted of "counterfeiting" — even though this was apparently the government's overriding theory of the case at trial. Rather, it asserts that Mr. von NotHaus was convicted of "a federal crime" of having "create[d] [a] private coin or currency system[] to compete with the official coinage and currency of the United States." Indeed, the indictment against Mr. von NotHaus did not present a factual picture charging the Liberty dollar to be a "counterfeit"

---

[2]*See* http://www.justice.gov/usao/ncw/press/nothaus.html.

2

U.S. dollar. Instead, it was crafted to present the Liberty dollar, by design and purpose, to be a "competing" currency, not an imitation one. *See* Indictment ¶¶ 12, 13, 15. Furthermore, none of the 10 paragraphs alleging resemblances of Liberty dollars to United States currency claimed a match of a Liberty coin to a United States coin of the same denomination. *See* Indictment ¶¶ 35-44.

In sum, the press release, indictment, and conviction in this case have alarmed GATA and, no doubt, have had a chilling effect on sound money organizations generally. For several reasons discussed herein, GATA believes that the issues being resolved in this case are matters of national significance, with profound implications respecting the constitutionality of the nation's monetary policy, the continuing vitality of the free market of precious metals, and the cause of sound money.[3] Prompted by these concerns, GATA submits this motion seeking leave to file a brief to challenge the constitutional and statutory legitimacy of the Court's instructions as they relate to 18 U.S.C. section 486 and to the conviction on all three counts of the indictment.

**A.    The Indictment Confuses "Counterfeiting" with "Competing" Currency.**

The indictment in this case appears to rest primarily upon the factual allegations that the purpose and use of the Liberty dollar was "to compete with United States currency," not to imitate it. *See* Indictment ¶¶ 12-16, 31. To be sure, the indictment contained some factual

---

[3]Public interest and concern in the Von NotHaus prosecution are reflected in numerous articles in the media, including the *Wall Street Journal* and *Coin World*. *See, e.g.,* Seth Lipsky, "When Private Money Becomes a Felony Offense" (Mar. 31, 2011) http://online.wsj.com/article/SB10001424052748704425804576220383673608952.html; Beth Deisher, "Verdict could have implications for all private mints in U.S." *Coin World* (Apr. 11, 2011) http://www.coinworld.com/articles/verdict-could-have-implications-for-all-priva/.

3

allegations of similarity between the Liberty dollar and U.S. currency (*see* ¶¶ 35-44), but none

of these factual allegations was coupled with any allegation that the Liberty dollar was

"counterfeit," or was calculated to deceive a person exercising ordinary caution and

observation in the usual transaction of business.  To the contrary, the factual allegations of

similitude followed on the heels of Paragraph 33, which plainly stated the gist of the

indictment's charge — that the Liberty dollar was illegal, not because it was "counterfeit," but

because it was "compet[ing] with the official coinage of the United States."  Thus, the

Indictment's Paragraph 33 reads as follows:

> Article I, section 8, clause 5 of the United States Constitution
> delegates to Congress the power to coin Money and to regulate
> the Value thereof.  This power was delegated to Congress in
> order to establish and preserve a uniform standard of value.
> Along with the power to coin money, Congress has the
> concurrent power to restrain the circulation of money which is
> not issued under its own authority in order to protect and
> preserve the constitutional currency for the benefit of the nation.
> Thus, it is a violation of law for private coin systems to compete
> with the official coinage of the United States.

As Mr. von NotHaus has pointed out in his post-trial motion for acquittal and a new

trial, Paragraph 33 of the superseding indictment was redacted before it was given to the jury.

Reasonably construing this last-minute redaction as an indication that the indictment was based

on "incorrect … conclusions about the law" (*see* Defendant's Post-Conviction Motions, p. 5),

Mr. von NotHaus has argued that the sufficiency of the evidence must be measured by the

standard required to prove the Liberty dollar to be a "counterfeit" currency — that is, one that

bears such likeness to United States coins that it would "'deceive an honest, sensible, and

unsuspecting person of ordinary observation and care dealing with a person supposed to be honest and upright.'" United States v. Ross, 844 F.2d 187, 190 (4th Cir. 1988).

Although the government claims that the evidence **meets** this counterfeiting standard as applied to Count II (charging a violation of section 485), the government contends that **it did not need to meet that standard** to justify his conviction under Count III (charging a violation of section 486):

> [D]efendant admitted at trial that the coins were of original design, which is also prohibited by [section 486] when the coins are intended to be used as current money. [S]ection 486 means what it says: it is a violation of federal law to make, utter, or pass "any coins of gold or silver or other metal, or alloys of metals, intended for use as current money, *whether in the resemblance of coins of the United States, or of foreign countries, or of original design*…" [*See* United States' Response in Opposition to Defendant's Motions Under Rules 29, 33, and 34 of the Fed.R.Crim.Proc. (Hereinafter "Govt. Resp."), p. 10 (bold and italics original).]

In support of its claim, the government reasserted what it had stated in the redacted portion of the indictment, namely, that by enacting 18 U.S.C. section 486, Congress purposed to "prevent the coining of money in **competition** with the United States; [the] resemblance or similitude … not necessarily an element" (emphasis added):

> The United States has the **sole power** to coin money under the Constitution, and if anyone, individual or state, assumes to supplant the medium of exchange adopted by our Government, or assumes to **compete** with the United States Government in this regard, a violation of [section 486 and its predecessors] would follow. Undoubtedly, no one can interfere with the **monopoly** which this Government has obtained by reason of the Constitutional provisions without running afoul of these statutes." [*Id.*, p. 10, n. 1 (emphasis added).]

It is apparent from Mr. von NotHaus's post-trial motion and the government's response that the Court's redaction of Paragraph 33 did not have its desired effect of removing the confusion caused by linking section 485 (a straight-forward counterfeiting charge) with section 486 (competing currency charge).

**B.** **The Jury Instructions Failed to Cure the Confusion.**

In its introductory instructions to the jury, the Court stated that defendant is charged "in **Count Three, [with] PASSING/UTTERING COUNTERFEIT COINS INTENDED FOR USE AS CURRENT MONEY … in violation of 18 U.S.C. § … 486.**" (Bold caps original.) However, in its specific instructions on the elements of the crime charged in Count III, the Court omitted entirely any reference to "counterfeit coins." Instead, the Court charged the jury that it could find the defendant guilty of a violation of section 486 if, intending the coins for use as current money, the defendant uttered or passed coins of silver if "[t]he coins were in resemblance of genuine coins of the United States; **or** [t]he coins were of original design." (Emphasis added.) Thus, the Court adopted the government's position that it need not prove the "coins" to be counterfeit in order to find Mr. von NotHaus guilty of violating section 486, as charged in Count III. *See* Concluding Instructions for Count Three. Rather, it would be enough for the jury to find that Mr. von NotHaus intended the Liberty dollar generally to compete with the official United States currency.

However, as the district court judge observed in <u>United States</u> v. <u>Bogart</u>, 24 F. Cas. 1185 (N.D.N.Y. 1878): "If it should be held that the [predecessor] section [of 486] makes it a crime to make or utter any pieces of metal, with the intent that the pieces shall serve as a substitute for money, an offense is created which is **new** and **foreign** to the law of

**counterfeiting**." *Id.* (bold added). Rather, the court in <u>Bogart</u> observed, "[a] counterfeit coin is one in imitation of the genuine." *Id.* Thus, even though "[t]he five dollar denomination of the Liberty dollar is the same size as the Kennedy half-dollar coin of the United States" and [t]he ten dollar denomination of the Liberty dollar is the same size as the Eisenhower dollar coin of the United States," as alleged in the indictment, nevertheless the indictment did not allege that either denomination of the Liberty dollar was designed to serve as a "substitute" for the U.S. coin to which it was compared, nor to pass as an "imitation of the genuine." The Court should have construed section 486, as <u>Bogart</u> construed its predecessor statute, not "to make it a crime to utter a token which does not purport to be in imitation or in substitution of any coin known to the law." *Id.*

Instead, the jury instructions here presented a conflicting picture of the elements of section 486, stating initially that Count III required a finding of "counterfeiting" (*see* Instructions, p. 3), and repeating that requirement with respect to the elements of the conspiracy charge in Count I (*see* Instructions, pp. 29-30, 31, 34, 37, 46-47), but omitting any reference to "counterfeiting" with respect to Count III (*see* Instruction, pp. 67, 73).

### C. As Construed and Applied Here, 18 U.S.C. section 486 is Unconstitutional.

In his motion to dismiss, Mr. von NotHaus argued that 18 U.S.C. section 486 was outside the delegated powers to Congress, the federal government having not been delegated any power to outlaw defendant's coin as a competing coin "of original design." *See* Motion to Dismiss Challenging the Sufficiency of the Indictment to State and Offense, pp. 5-22. On March 3, 2011, this Court entered an oral order denying this motion. *See* Docket, Minute Oral Order of 03/03/2011. GATA requests that the Court reconsider its order in light of the

7

fact that it was entered before trial, and before the issue could be considered in the light of the jury instructions, as discussed *supra*. These important constitutional issues would be elaborated upon in an amicus curiae brief, if permitted by the Court, along the following lines.

Contrary to this Court's instruction to the jury that "[t]he United States Constitution vests the power to mint coins exclusively in the Congress" (Jury Instruction on "Power to Mint Coins," p. 53), Article I, Section 8, Clause 5 does not describe Congress's power to "coin money" to be "exclusive." Had the grant of power to coin money been intended to be exclusive, there would have been no need for Article I, Section 10 expressly to forbid the States to "coin money." Furthermore, Article I, Section 8, Clause 6 vested Congress with the power the "to provide for the punishment of counterfeiting … the current coin of the United States." And as the district court stated in <u>United States</u> v. <u>Bogart</u>, *supra*, to "make[] it a crime to make or utter any pieces of metal, with the intent that the pieces shall serve as a substitute for money [would be] foreign to the law of counterfeiting," and presumably, outside the powers delegated to Congress. Thus, a non-exclusive enumerated power, expressly **prohibited to the States** by Article I, Section 10, is, under the Tenth Amendment, **reserved to the People**.

In short, the constitutional text cannot be construed to deny to the people the power voluntarily to determine, among themselves, the medium of exchange, except in one respect — the people have no power to promote a medium of exchange that would counterfeit the one created by Congress. The constitutional question as to whether Congress can prohibit a private citizen from creating a medium of exchange "of original design" is a question of first

8

impression, and is one of signal importance in this case. It deserves full briefing by all parties and a written opinion by this Court.

## II.   THE ACCEPTANCE OF BRIEFS AMICUS CURIAE HAS BEEN FOUND USEFUL IN CASES SUCH AS THIS.

GATA has long experience and expertise with respect to matters relating to money, precious metals, and monetary policy and believes that its amicus curiae brief would provide assistance to this Court with respect to both the constitutional issues involved, and the manner in which the case was presented to the jury. District courts have inherent power to grant leave to file briefs amicus curiae, as they often "provide helpful analysis of the law... they have a special interest in the subject matter of the suit... or existing counsel is in need of assistance." Bryant v. Better Bus. Bureau of Greater Md., Inc., 923 F. Supp. 720, 728 (D. Md. 1996). Indeed, amicus curiae briefs have been permitted in criminal cases in this district. *See*, *e.g.*, United States v. Flowers, 2007 U.S. District LEXIS 83211 (W.D.N.C. 2007).

## CONCLUSION

Given the nationwide significance of the instant case, and its profound implications for persons and organizations other than the defendant, and the apparent error in the way the case was presented to the jury, GATA respectfully requests leave within 10 days after the granting of this motion to file a brief amicus curiae addressed to the issue whether 18 U.S.C. section 486, as construed and applied in this case, is within the constitutional authority of Congress, and related issues, as indicated in this motion.

9

*Of Counsel*
William J. Olson
Herbert W. Titus
John S. Miles
Jeremiah L. Morgan
William J. Olson, P.C.
370 Maple Ave., W. Ste. 4
Vienna, VA 22180
Telephone: (703) 356-5070
Fax: (703) 356-5085
Email: wjo@mindspring.com

*Of Counsel*
Gary G. Kreep
United States Justice Foundation
932 D St., Suite 2
Ramona, CA  92065-2355
Telephone: (760) 788-6624
Fax: (760) 788-6414
Email: usjf@usjf.net

 /s Thomas J. Ashcraft
Thomas J. Ashcraft
Attorney at Law
Counsel for Movant
610 E. Morehead St., Suite 104
Charlotte, NC  28202-2614
Telephone: (704) 333-2300
Fax: (704) 377-1226
Email: tashcraft@bellsouth.net

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served this 18th day of May, 2011, by means of the Electronic Filing System for the Western District of North Carolina, upon the following parties:

For the Government:
**Jill Westmoreland Rose**
Assistant U.S. Attorney
100 Otis Street, Room 233
Asheville, NC 28801
828-271-4661
Fax: 828-271-4670
Email: jill.rose@usdoj.gov

**Thomas R Ascik**
Assistant U.S. Attorney
100 Otis Street, Room 233
Asheville, NC 28801
828-259-0644
Email: thomas.ascik@usdoj.gov

**Craig D. Randall**
U.S. Attorneys Office
227 W. Trade St.
Charlotte, NC 28202
704/344-6222
Fax: 704/227-0197
Email: craig.randall@usdoj.gov

**Benjamin Bain-Creed**
U.S. Attorney's Office
227 West Trade Street
Suite 1650, Carillon Building
Charlotte, NC 28202
704-338-3123
Fax: 704-344-6629
Email: benjamin.bain-creed@usdoj.gov

For Bernard von NotHaus:
**Aaron E. Michel**
Attorney at Law
3736 Surry Ridge Court
Charlotte, NC 28210
704-451-8351
Email: mail@aaronmichel.com

**Randolph Marshall Lee**
Attorney at Law
PO Box 77005
Charlotte, NC 28271-7000
704-481-2222
Email: RandolphLeeLaw@gmail.com

For William Kevin Innes:
**Claire J. Rauscher**
Federal Defenders of Western North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720
Fax: 704-374-0722
Email: Claire_Rauscher@fd.org

**Erin Kimberly Taylor**
Federal Defenders of Western North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720
Fax: 704-374-0722
Email: Erin_Taylor@fd.org

For Sarah Jane Bledsoe:
**Joe Von Kallist**
6743-A Fairview Road
Charlotte, NC 28210
704-366-9008
Fax: 704-365-2109
Email: joevonkallist@yahoo.com

For Rachelle L. Moseley:
**Matthew G. Pruden**
301 E. Park Avenue
Charlotte, NC 28203
704-338-1220
Fax: 704-338-1312
Email: mpruden@tinfulton.com

      This the 18th day of May, 2011.

/s Thomas J. Ashcraft_____
Thomas J. Ashcraft
**Attorney at Law**