IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:09CR27

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **ORDER DISMISSING PETITION OF** |
| v. ) | **WILLIAM T. LAWSON, MD.** |
| ) | |
| BERNARD VON NOTHAUS ) | |
| ) | |
| _____ ) | |
| PETITION OF WILLIAM T. LAWSON, M.D. ) | |

THIS MATTER is before the Court on Motion of the United States of America. The United States moves this Court, pursuant to Fed. R. Crim. P. 32.2(c)(1)(A), to dismiss the Petition of William T. Lawson, M.D. (Doc. 709; "Lawson Petition") for failure to assert standing and failure to state a claim upon which relief can be granted. Essentially, Lawson claims entitlement to 500 ounces of silver by virtue of an agreement with Vernon Robinson that Robinson would sell the 500 ounces to Lawson. The United States contends that Lawson does not have standing and has not stated a claim for a variety of reasons, but the crux of the United States' argument is that Lawson has not stated a claim because he has stated that the $10,000 that he provided to Robinson was never, in-fact, provided to Defendant. Thus, the United States argues, Lawson cannot be a bona fide purchaser for value from Defendant, even if Lawson is allowed to invoke a constructive trust theory. For the reasons stated herein, this Court will GRANT the United States' Motion and the Lawson Petition is hereby DISMISSED.

In support hereof, the COURT FINDS AS FOLLOWS:

I.      **Standard of Review**

Federal Rule of Criminal Procedure 32.2(c)(1)(A) provides that "[i]n the ancillary proceeding, the court may, on motion, dismiss [a] petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the

1

petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A). "This procedure is treated like a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) . . . . Dismissal of a claim is appropriate only where 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' . . . In ruling on a motion to dismiss, [the court] construes all well-pleaded allegations of the petition as true and draw[s] all reasonable inferences in favor of the plaintiff . . . ." *United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007).

II. **Legal Analysis**

A. **Undisputed facts[1] from Lawson Petition**

According to the Lawson Petition, Lawson paid $10,000 to Robinson to purchase 500 ounces of silver. Lawson Petition (Doc. 709) at Page 1. According to the Lawson Petition and to Lawson's Affidavit supporting the Petition, he "understood from Mr. Robinson's representations that he had immediate access to the 500 ounces of silver at the warehouse."[2] Lawson Petition (Doc. 709) at ¶ 1; Lawson Affidavit (Doc. 709-1) at ¶ 7. According to Lawson, "[a]s a result of the seizure, Dr. Lawson did not receive his Property. [Further,] Mr. Robinson did not return the purchase price to Dr. Lawson." Lawson Petition (Doc. 709) at ¶ 5. According to Lawson, Robinson did not return the money because "[h]e needed the money quite badly and was in no position to return it." Lawson Petition Affidavit (Doc. 709-1) at ¶ 10. Further, the materials submitted by Lawson make various representations about his knowledge, or lack thereof, of the forfeitability of the seized property in this case.

B. **Undisputed facts from Robinson Petition**

---

[1] The Government advises that, solely for purposes of its Motion and the standard under which the Motion is reviewed, the Government does not dispute the facts in the Lawson and Robinson petitions.
[2] As elaborated below, it is not clear based on the Lawson Petition whether Dr. Lawson was purchasing from some inventory already purchased and owned by Robinson or purchasing from the mint itself. Although immaterial for the discussion herein, there are also inconsistencies in the Petition and supporting documents about whether Lawson expected something to be minted or believed that he was purchasing something in raw form.

2

According to the Robinson Petition (attached to the Lawson Petition as Exhibit B), Robinson requests "506 additional ounces of silver seized, which I owe to one William J. Lawson of Cary, North Carolina, having contracted to sell the same to him just prior to the government's seizure of those dollars, and which sale I have been unable to consummate from that time forward."[3] Lawson Petition, Exhibit B (Doc. 709-3), at ¶ 5. The Robinson Petition does not contain any statement under penalty of perjury, or any statement at all, or any documentation to suggest that the contract with Lawson was written. The Robinson Petition also does not contain any statement at all that Robinson owned the 506 ounces in *his* inventory of silver or that the ounces were otherwise his to sell in the first place. Further, at no point does Robinson assert that that he ever provided Lawson's $10,000[4] to Defendant or one of Defendant's entities for the purchase, or that he intends to do so now. Finally, the Lawson Petition itself and the Lawson Affidavit corroborate the Robinson Petition and do not indicate a written contract, do not indicate whether Robinson actually owned the inventory that he contracted to sell, and do not indicate that Robinson paid the $10,000 to Defendant.[5]

### C. Dismissal for lack of standing and failure to state a claim

---

[3] According to the emails attached to the Lawson Petition, the discrepancy between 500 and 506 ounces may relate to shipping costs.

[4] Although, for purposes of its Motion, the Court gives Lawson the benefit of the doubt that he paid $10,000 to Robinson, Robinson's testimony at trial was that Lawson paid $9,000, not $10,000. Transcript (Doc. 276) at Page 131, Lines 11-17.

[5] On whether Robinson actually owned the silver that he contracted to sell, the emails between Robinson and Lawson suggest that Robinson told Lawson that he might have possession of some items in the warehouse, but do little to clarify who owned what inventory and, if Robinson owned the inventory, whether he had paid for it and what agreement gave him ownership. *Compare* Lawson Affidavit (Doc. 709-1) at ¶ 4 (Robinson "informed me that he was in possession of silver coins [ . . . . ] in a warehouse to which he had access." The agreement was in "conversations [ . . . . ]") *with* Lawson Emails at Exhibit A (Doc. 709-2) at Pages 1 (From Lawson—"So now I understand that I wasn't waiting for the mint to create my pieces, but simply take delivery out of your inventory. In the best case, I feel like I received REALLY poor customer service. In the worst case, I feel defrauded."), *and* 1 (From Lawson—"17 days is a ridiculously long time to wait for silver to be shipped out of existing inventory [ . . . . ]"), *and* 3 (From Robinson—"It was my silver so I could do whatever deal I liked."), *and* 6 (From Robinson—"NORFED removed the silver from my account and the silver was seized in a federal raid.").

The courts have dismissed petitions for lack of standing because petitioners did not have legal interests in the forfeited property. "[T]he touchstone for standing is the possession of a legal interest in the forfeited property." *United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012); *see also, e.g., United States v Jones*, 2005 WL 1806406, at *3 (W.D.N.C. July 27, 2005) (Discussing that a legal interest in the debtor's property alone is not sufficient; a petitioner must have a legal interest in the property subject to forfeiture.).

Under 21 U.S.C. § 853(n)(2),[6] a petitioner must allege facts sufficient to meet both constitutional and statutory standing requirements. *United States v. Timley*, 507 F.3d 1125, 1129-30 (8th Cir. 2007); *see United States v. Loria*, 2009 WL 3103771, at *2 (W.D.N.C. Sept. 21, 2009). To establish constitutional standing, a petitioner must demonstrate an ownership or possessory interest in seized property. *Timley*, 507 F.3d at 1129-30. Statutory standing is "the authority provided by statute to bring a suit" and, to establish statutory standing, a petitioner must have a legal interest in seized property. *Id.*; *see also United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012); *United States v. Jaynes*, 2009 WL 129969, *2 n.1 (W.D.N.C. Jan. 20, 2009), citing In re Mutual Funds Investment Lit.*, 529 F.3d 207, 216 (4th Cir. 2008). A petition should be dismissed on the issue of standing if a petitioner has not asserted a legal interest in property subject to forfeiture. *Oregon*, 671 F.3d at 490 n.6, *citing CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).

Although the Fourth Circuit has "occasionally departed from state law" in "circumstances where there is evidence a defendant has manipulated state law property rights to shield assets," the "norm" is to look to state law in determining whether a petitioner has a legal interest in forfeited property. *Oregon*, 671 F.3d at 490 n.7; *see also Timley*, 507 F.3d at 1129; *United*

---

[6] By virtue of Section 853 itself, 18 U.S.C. § 982(b)(1), and 28 U.S.C. § 2461(c), Section 853 is applicable to this proceeding in which assets were preliminarily forfeited under 18 U.S.C. §§ 492 and 982.

*States v. Schecter*, 251 F.3d 490, 494-95 (4th Cir. 2001). Further, the state law legal interest must be sufficient to satisfy either subparagraph (A) or subparagraph (B) of 21 U.S.C. ' 853(n)(6), which "sets out the standard by which the court will evaluate a third party=s claim which, if satisfied, requires the court to amend the forfeiture order to accommodate that interest.@ *United States v. Phillips*, 185 F.3d 183, 186 (4th Cir. 1999).

Here, as described more fully below, Lawson makes a claim under Section 853(n)(6)(B) as a bona fide purchaser for value. Under Section 853(n)(6)(B), a petitioner prevails if he establishes by a preponderance of the evidence that he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture [ . . . . ]@[7] Here, since, for the purposes of this Motion, the Government does not dispute the facts in the Lawson Petition, the Court assumes that Lawson "reasonably [was] without cause to believe that the property was subject to forfeiture[.]" Therefore, the only issue is whether Lawson has pled sufficient facts to overcome dismissal on whether he was a "bona fide purchaser for value of the right, title, or interest in the property[.]" As elaborated further below, courts speak about the bona fide purchaser prong of Section 853(n)(6)(B) in terms of an arm's length transaction or exchange of equivalent value between the petitioner and the defendant. *See, e.g., United States v. Alquzah*, 91 F.Supp. 3d 818, 827 (W.D.N.C. 2015) (noting that petitioner had not identified an arm's length transaction or exchange of value between herself and defendant), *citing*, *United States v. Munson*, 477 Fed. Appx. 57, 67 (4th Cir. 2012).

### D. Lawson's claims

---

[7] *See United States v. McHan*, 345 F.3d 262, 267-72 (4th Cir. 2003), for a discussion of the related "relation-back doctrine" set forth in Section 853(c) and its legislative history, as well as the general legal structure of criminal forfeiture.

Lawson does not cite state law in his Petition or clarify whether the contract with Robinson was oral or written or what state law governs.[8] Instead, Lawson asserts that he is a bona fide purchaser by virtue of his status as an unsecured creditor. To support his argument, Lawson cites to *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir. 1987). As Lawson rightly contends, *Reckmeyer* provides that the term, "'bona fide purchaser for value' must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return." *Id.* at 208.

### E. *Reckmeyer* is limited to its factual setting involving forfeiture of a defendant's entire estate; Lawson does not aver facts to invoke *Reckmeyer*

However, *Reckmeyer's* provision for standing by unsecured creditors has been limited to its factual setting—namely, cases in which petitioners provided value to defendants and the entirety of a defendant's estate is forfeited. *See Schecter*, 251 F.3d at 495-96; *Jaynes*, 2009 WL 129969 at *3; *United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1069 (E.D. Va. 1995) (Noting that *Reckmeyer* only applies if entire estate is forfeited and, even then, requires that the petitioner show an interest in the forfeited property.). Here, Lawson has not averred that the entirety of Defendant's estate was forfeited and, as the record reflects, Defendant maintained assets even after the forfeiture, including but not limited to assets to retain numerous able counsel. Thus, *Reckmeyer's* constructive trust provision is not properly invoked on the face of the pleadings.

### F. Section 853(n)(6)(B) requires provision of "value" to defendant for the forfeited assets and *Reckmeyer* speaks in terms of a petitioner providing value to a defendant; Lawson does not aver facts about value provided to or dealings with Defendant or his entities.

Even if Lawson had averred sufficient facts to invoke the "unsecured creditor" portions of *Reckmeyer* and apply that ruling in *Reckmeyer* to a Section 853(n)(6)(B) analysis here,

---
[8]Even if Lawson had pled that this was a case governed by the North Carolina UCC, Lawson could not prevail because there is no written contract for the goods and payment has not been made to Defendant. N.C. Gen. Stat. § 25-2-201 (Formal requirements; Statute of frauds.)

Section 853(n)(6)(B) itself contains a "for value" prong that Lawson has not satisfied and cannot satisfy. Section 853(n)(6)(B) explicitly requires "value" for the "right, title, or interest in the property." Here, property was forfeited from Defendant and his entities. Further, value was provided by Lawson to Robinson.

However, Lawson makes no connection between that value and the forfeited property, as is required to state a claim. Instead, Robinson retained the $10,000 in value. Without that integral link between value and forfeited property/Defendant, much less any specifics as to what exact property Lawson claims, Lawson has not asserted standing or stated a claim upon which relief can be granted. *See, e.g., United States v. Bailey,* 926 F. Supp. 2d 739, 772 (W.D.N.C. 2013) (discussing bona fide purchaser definition in *Reckmeyer* and noting that petitioners had satisfied all of the requirements of "bona fide purchaser" since, among other things, they had transferred their IRA funds *to Defendant's entity* for the sole purpose of using Defendant's custodial services to purchase the assets that they claimed), *citing, Reckmeyer,* 836 F.2d at 208; *see also United States v. 328 Pounds, More or Less, of Wild American Ginseng*, 347 F. Supp. 2d 241, 247-48, (W.D.N.C. 2004) (civil forfeiture case wherein court held that claimant had standing when claimant had averred that, under Uniform Commercial Code, Defendant had identified property claimed by claimant under contract).

This reading of Section 853(n)(6)(B) is no stretch. Indeed, *Reckmeyer* itself, in providing examples of bona fide purchaser transactions, speaks in terms of a petitioner's relationship in "arms'-length transactions with the defendant" and giving value "to the defendant" or to his "estate" in which a "fair exchange" is made. *Reckmeyer*, 836 F.2d at 207-208. And, although *Reckmeyer's* constructive trust provisions have been limited as discussed herein, *Reckmeyer's* definition of bona fide purchaser in terms of the relationship between the petitioner and the

7

defendant has been cited again and again without controversy by the Fourth Circuit Court of Appeals and district courts within the Fourth Circuit. *See, e.g., United States v. Cox,* 575 F.3d 352, 356 (4th Cir. 2009) (in case overturning attorney fee award against Government, citing *Reckmeyer* bona fide purchaser for value definition requiring the giving of value to defendant); *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005); *United States v. Lewis*, 2014 WL 3630287, at *4 (D.S.C. July 16, 2014) ("A 'bona fide purchaser for value' includes only those 'who give value to the defendant in an arms'-length transaction with the expection that they would receive equivalent value in return'") (citation omitted); *Bailey*, 926 F. Supp. 2d at 772.

Section 853(n)(6)(B) and *Reckmeyer* simply do not contemplate a petitioner receiving forfeited assets as satisfaction of a transaction between the petitioner and someone *other than* the defendant, particularly where that person other than the defendant never gave value to the defendant. In such a circumstance, a "fair exchange" has not been made between the petitioner and the Defendant from whom property is taken.

### III.   Conclusion

Here, the 500 ounces is either (1) Robinson's metal that he has not claimed under penalty of perjury as his or (2) neither Robinson's metal nor Lawson's metal, because Robinson did not pay Defendant for the metal. In either event, Robinson may owe Lawson $10,000. However, that liability by Robinson to Lawson is not a matter for this forfeiture proceeding. In either event, although it is unfortunate that Lawson may have lost $10,000 to Robinson, the 500 ounces is not Lawson's metal based on the facts pled by Lawson.

IT IS, THEREFORE, ORDERED that the Lawson Petition is dismissed for failure to assert standing and failure to state a claim upon which relief can be granted.

Signed: February 17, 2016

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge