IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:09-CR-00027-RLV-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **FINAL ORDER AND** |
| BERNARD VON NOTHAUS, | ) | **JUDGMENT OF FORFEITURE** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on the Government's Motion for Final Order and Judgment of Forfeiture and Supplemental Memorandum in support of its Motion. (Docs. 812, 839). Pursuant to Fed. R. Crim. P. 32.2(c)(2), the Government requests that this Court issue a Final Order and Judgment of Forfeiture on Adjudicated and Unclaimed Assets subject to this ancillary forfeiture proceeding. (Doc. 839 at 1). Specifically, the Government requests a Final Order authorizing disbursement of certain assets to which certain claim petitioners are entitled pursuant to numerous orders of this Court and requests final forfeiture of any remaining assets. *Id.* at 3. Subsequent to the Government's Supplemental Memorandum, Claim Petitioner David L. Gille filed a Response in Opposition to the Government's Proposed Final Order (Doc. 840) and Claim Petitioner Matthew Pitagora filed a Motion for Clarification (Doc. 841). The Government responded to Pitagora's Motion for Clarification and Pitagora filed a reply. (*See* Docs. 842, 845). Also before the Court are eight Motions for Immediate Return of Property filed by Claim Petitioners Michael Lunnon, Brenda Ketcherside, Max Price, Trevor Gamble, Frederic Lehrman, Arthur Atkinson, Harriett J. Eck, and Michael J. Eck (Docs. 824-31), and a Motion to Amend filed by Claim Petitioner Vernon L. Robinson (Doc. 820). The Government has filed a Response to Robinson's Motion to Amend, contesting the Motion only to the extent that it may be construed

1

as requesting shipping costs. (Doc. 823). For the reasons that follow, (1) Robinson's Motion to Amend (Doc. 820) is **GRANTED IN PART** and **DENIED IN PART**; (2) the objection in Gillie's Response in Opposition to the Government's Motion (Doc. 840) is **OVERRULED** and, to the extent that the objection is construed as a Motion for Reconsideration, the Motion for Reconsideration is **DENIED**; (3) Pitagora's Motion for Clarification (Doc. 841) is **DENIED**; (4) the Motions for Immediate Return of Property (Docs. 824-31) are **DENIED AS MOOT**; and (5) the Government's Motion for Final Order and Judgment of Forfeiture (Doc. 812), as amended by the Government's Supplemental Memorandum (Doc. 839), is **GRANTED WITH MODIFICATION**.

I.  **PROCEDURAL & FACTUAL BACKGROUND**

A jury convicted Bernard von NotHaus of conspiracy to defraud the United States by making, uttering, and passing counterfeit coins, in violation of 18 U.S.C. § 371, falsely making and forging counterfeit coins, in violation of 18 U.S.C. §§ 485, 2, and uttering and making coins of silver intended for use as current money, in violation of 18 U.S.C. §§ 486, 2. (Doc. 287 at 1). Based on the Superseding Bill of Indictment and the offenses of conviction, this Court issued a Third Preliminary Order of Forfeiture, which designated certain monies and properties—various bars of precious metal, coins, dies and molds, and $254.424.09 in United States currency—as preliminarily forfeited. (Doc. 297 at 1-2). To protect the rights of third parties with interests in the properties preliminarily forfeited, this Court commenced an ancillary forfeiture proceeding wherein third parties could file petitions instituting claims over the properties not deemed contraband *per se*. *Id.* at 2-4. On the same day that this Court issued the order commencing the ancillary forfeiture proceeding, this Court also issued an order of final forfeiture, which deemed

certain properties, including a vast array of different coins, as contraband *per se* and not subject to claims or possession by third parties. (*See* Doc. 296).

Following this Court's Third Preliminary Order of Forfeiture, the Government published several notices regarding the ancillary forfeiture proceeding and sent personal notices to those individuals that the Government had reason to believe had an interest in the property and monies preliminarily forfeited. (Doc. 616-1, *see also* Doc. 779-2). The Court received 327 claim petitions from 310 claim petitioners.[1] Of the 327 claim petitions, the Government did not contest 275 claim petitions from 266 different claim petitioners, (Doc 633), and this Court issued an Order granting those 275 claim petitions.[2] (Doc. 648). As to the remaining fifty-two claim petitions, this Court permitted limited discovery on several petitions (*See* Docs. 649-52) before entertaining the Government's motions on all fifty-two remaining claim petitions. Of the remaining fifty-two claim petitions, (1) five claim petitions were granted following the Government moving to grant those claim petitions (*See* Doc. 754, 755, 795, 798, 802); (2) thirty-two claim petitions were granted in part and denied in part (*See* Docs. 716, 717, 718, 720, 721, 722, 723, 733, 740, 741, 742, 743, 744, 745, 746, 747, 748, 749, 750, 757, 758, 759, 760, 794, 796, 801); (3) twelve claim petitions were denied (*See* Docs. 719, 731, 734, 735, 736, 737, 738, 739, 761, 797, 799, 800); (4)

---

[1] Ten claim petitioners either filed addendums to their original claims or replaced an original claim or claims with an amended claim petition. (*See* Docs. 303, 653, 691, 696, 311, 386, 362, 472, 546, 380, 572, 385, 499, 422, 574, 458, 573, 482, 571, 534, 700, 692, 697). Seventeen claim petitioners filed two separate, unamended claim petitions, and one claim petitioner filed three separate, unamended claim petitions. (*See* Docs. 299, 308, 300, 379, 310, 704, 386, 446, 330, 447, 347, 387, 593, 361, 472, 368, 559, 373, 449, 375, 500, 499, 506, 392, 507, 485, 570, 487, 508, 505, 605, 513, 753, 516, 608, 561, 562, 606, 622). Two claim petitions were filed jointly, each by a pair of claim petitioners (Docs. 374, 779).

[2] The Government's Motion to Grant 265 Petitions (Doc. 633) conflated "claim petitions" with "claim petitioners" and further did not observe that one of the claim petitions was filed jointly by two claim petitioners. Thus, in actuality, the Government's Motion to Grant 265 Petitions, was a motion to grant 275 claim petitions brought by 266 claim petitions, inclusive of five amended claim petitions that took the place of earlier-filed claim petitions by the same claim petitioner. Specifically, the Government's Motion, and this Court's order granting the Motion (Doc. 648) granted multiple claim petitions from Claim Petitioners Christopher Adair (Docs. 299, 308), David Hall (Docs. 516, 608), Robert Jungles (Docs. 368, 559), Brenda Ketcherside (Docs. 374, 449), Robert L. Minarik (Docs. 505, 605), Michael Pannone (Docs. 300, 379), Richard Tanguay (Docs. 375, 500), Erik Thurber (Docs. 485, 570), Joseph Frank Vienna (Docs. 392, 507), and Albert J. Wagner (Docs. 606, 622).

two claim petitions were settled before this Court took any action addressing the potential merits of the claim petitions (Docs. 708; 808); and (5) one claim petition was settled after this Court granted in part and denied in part the Government's motion to dismiss the claim petition and scheduled a hearing on the claim petition (Doc. 838, *see* Docs. 832, 834).

## II. DISCUSSION

The Government has filed a Motion for Final Order and Judgment of Forfeiture and Supplemental Memorandum in support of its Motion (Docs. 812, 839). Several claim petitioners also have pending motions or objections before the Court. The Court will consider the motions and objections of the claim petitioners before reaching the Government's Motion for Final Order and Judgment of Forfeiture.

### A. Motion to Amend by Claim Petitioner Robinson

Robinson's Motion to Amend asks the Court to re-account for 500 troy ounces of silver that Robinson alleges had been transferred out of his NORFED account to the benefit of Claim Petitioner William Lawson prior to the Government seizing NORFED's assets as part of the criminal investigation into von NotHaus. (Doc. 820 at 1-4). In his Motion to Amend, Robinson acknowledges that he previously failed to produce evidence demonstrating that the silver was transferred out of his account before the seizure, but he contends that he has now located a screenshot of his NORFED account establishing when the transfer occurred. *Id.* at 3, (*see also* Doc. 820-1 at 2). Robinson asks this Court to amend its earlier orders such that Lawson receives 500 troy ounces of silver from the unclaimed silver seized from NORFED rather than from proceeds otherwise eligible to be distributed to Robinson. (Doc. 820 at 4). Robinson further seeks recovery of 3.75 troy ounces of silver, the shipping cost paid to NORFED for NORFED's transfer of the silver to Lawson. *Id.* In response, the Government expresses skepticism regarding

Robinson's supporting evidence but opts to consent to the Motion to Amend with respect to the 500 troy ounces of silver based on its practice in this case of consenting to claims submitted under penalty of perjury. (Doc. 823 at 2). The Government, however, contests Robinson's right to the 3.75 troy ounces of silver allegedly used to cover shipping costs. *Id.*

This Court shares the Government's skepticism regarding whether the 500 troy ounces of silver at issue in Robinson's Motion to Amend were transferred out of Robinson's account prior to the Government's seizure, and the new evidence produced by Robinson (Doc. 820-1) does little to vanquish this Court's skepticism. Nonetheless, in light of the Government's position, this Court **GRANTS** Robinson's Motion to Amend with respect to the 500 troy ounces of silver such that Robinson shall now be permitted to recover 1852.5135 ounces of silver from the preliminarily forfeited silver and Lawson shall now be permitted to recover 500 ounces of silver from the preliminarily forfeited silver. The Court, however, **DENIES** Robinson's Motion to Amend with respect to the 3.75 ounces of silver for shipping. Put simply, if the transaction occurred at the time alleged by Robinson in his Motion to Amend, then the 3.75 ounces of silver to cover shipping costs had already been removed from Robinson's account and were the property of NORFED at the time of the seizure. In other words, Robinson cannot simultaneously claim that the transaction occurred such that he does not owe Lawson the 500 ounces of silver while also claiming that the transaction did not occur such that he is entitled to the return of the 3.75 ounces for shipping costs.

    B.    <u>Objection by Claim Petitioner David L. Gillie</u>

This Court granted in part and denied in part David L. Gillie's claim to certain preliminarily forfeited property. (*See* Doc. 760 (addressing Doc. 499, Gillie's amended first claim petition)).[3] Relative to the denial, the Court concluded that certain coins Gillie sought to recover, including

---

[3] In a separate order not at issue in Gillie's objection, this Court granted Gillie's Second Claim Petition (Doc. 506). (*See* Docs. 648, 633-1 at 2).

"five hundred (500) ½ ounce silver Peace coins" were contraband *per se* and could not be returned to Gillie. *See id.* at 3; (*see also* Doc. 296). In his objection, which this Court also construes as a Motion for Reconsideration as to Document 760, Gillie seeks to recover coins he calls the "Stop the War" coin. (Doc. 840 at 2). The Court concludes that the coin Gillie refers to as the "Stop the War" coin is the "Peace" coin as the head's side of the coin features the word "PEACE" above a head logo of the Statue of Liberty while the tail's side of the coin features the phrase "STOP THE WAR" above a depiction of the Statue of Liberty's torch. (*See* Doc. 784-1). Accordingly, this Court has previously determined that the coin Gillie calls the "Stop the War" coin is contraband *per se*. Therefore, Gillie's objection to the Government's Motion Final Order and Judgment of Forfeiture is **OVERRULED** and, to the extent that his objection is construed as a Motion for Reconsideration, reconsideration is **DENIED**.

C. Motion for Clarification by Claim Petitioner Matthew Pitagora

In his Motion for Clarification, Pitagora asks the Court for an opinion as to whether the California Dollar, Chambersburg Dollar, Milwaukee/ANA Dollar, and Gillie Dollar are contraband *per se*. (Doc. 841). In response to Pitagora's Motion for Clarification, the Government argues that Pitagora's Motion amounts to a request for an advisory opinion since Pitagora did not seek to recover any of the items listed in his Motion through his claim petition. (Doc. 842). Thus, the Government contends, Pitagora lacks standing to pursue his Motion. *Id.* In reply, Pitagora relies on his status as a claim petitioner to establish standing. (Doc. 845).

In his claim petition, Pitagora asserted that he was the rightful owner of certain amounts of gold, silver, and copper coins seized during the investigation of von NotHaus. (Doc. 578 at 1). To support his claim petition, Pitagora produced a slew of warehouse receipts and some bills of sale for specific amounts of silver and copper coins. (*See* Doc. 578 at 3-8, Doc. 578-1 through Doc.

6

578-18). This Court granted Pitagora's claim petition in part and denied the claim petition in part, permitting Pitagora to recover five ounces of gold and 1,281.65 ounces of silver based on warehouse receipts but precluding him from recovering any $1 copper Peace Dollars, silver Peace Dollars, and silver Liberty coins because these three types of coins were contraband *per se*. (Doc. 747 at 2-3). As of the date of this order, Pitagora has not filed a second claim petition alleging an ownership interest in the California Dollar, Chambersburg Dollar, Milwaukee/ANA Dollar, or Gillie Dollar. Accordingly, where it is not apparent that Pitagora has stated any ownership interest in the California Dollar, Chambersburg Dollar, Milwaukee/ANA Dollar, or Gillie Dollar, Pitagora lacks standing with respect to his request for clarification as to the legality of those four dollars and it would be remiss for this Court to issue an advisory opinion on the matter. Therefore, Pitagora's Motion for Clarification (Doc. 841) is **DENIED**.

D.     Motions for Immediate Distribution of Property

Claim Petitioners Michael Lunnon, Brenda Ketcherside, Max Price, Trevor Gamble, Frederic Lehrman, Arthur Atkinson, Harriett J. Eck, and Michael J. Eck have each filed motions for the immediate return of their property. (Docs. 824-31). The return of property to claim petitioners in this matter is only appropriate after the issuance of a final order of forfeiture. (*See* Doc. 648 at 1, Doc. 722 at 3, Doc. 741 at 3, Doc. 755 at 2). Accordingly, prior to the issuance of this order, the Government was not in a position to distribute property to any claim petitioners. The issuance of this order, however, moots the Motions for the Immediate Return of Property as this final order and judgment of forfeiture authorizes the Government to disburse the property at issue. Therefore, while the Motions for the Immediate Return of Property (Docs. 824-31) are **DENIED AS MOOT**, Lunnon, Ketcherside, Price, Gamble, Lehrman, Atkinson, Harriett Eck, and Michael Eck, as well as all other successful claim petitioners, may now, through compliance with

7

the requirements of this order and the order granting their claim petition, receive the property they have been granted an interest over by previous orders of this Court.

  E.  Government's Motion for Final Order of Forfeiture

Rule 32.2(c) of the Federal Rules of Criminal Procedure governs ancillary forfeiture proceedings and final orders of forfeiture on assets subject to ancillary forfeiture proceedings. Rule 32.2(c) provides, in pertinent part:

> When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights. If no third party files a timely petition, the preliminary order becomes the final order of forfeiture if the court finds that the defendant (or any combination of defendants convicted in the case) had an interest in the property that is forfeitable under the applicable statute . . . . nor may a third party object to the final order on the ground that the third party had an interest in the property.

Fed. R. Crim. P. 32.2(c)(2). Here, a final order of forfeiture is appropriate because (1) the Government has taken more than adequate steps to notify individuals with potential interests in the preliminarily forfeited properties; and (2) this Court, in what has been a nearly two-and-one-half year ancillary forfeiture proceeding, has resolved all of the claim petitions presented to this Court. Therefore, the Government's Motion for Final Order and Judgment of Forfeiture (Doc. 812), as amended by the Government's Supplemental Memorandum (Doc. 839), is **GRANTED** as **MODIFIED** by the Decretal.

**III. DECRETAL**

  **IT IS, THEREFORE, ORDERED THAT**:

  (1) Claim Petitioner Vernon L. Robinson's Motion to Amend (Doc. 820) is **GRANTED IN PART** and **DENIED IN PART**;

(2) The objection in Claim Petitioner David L. Gillie's Response in Opposition to the Government's Motion (Doc. 840) is **OVERRULED** and, to the extent that the objection is construed as a Motion for Reconsideration, the Motion for Reconsideration is **DENIED**;

(3) Claim Petitioner Matthew Pitagora's Motion for Clarification (Doc. 841) is **DENIED**;

(4) The Motions for Immediate Return of Property (Docs. 824-31) filed by Claim Petitioners Michael Lunnon, Brenda Ketcherside, Max Price, Trevor Gamble, Frederic Lehrman, Arthur Atkinson, Harriett J. Eck, and Michael J. Eck are **DENIED AS MOOT**; and

(5) The Government's Motion for Final Order and Judgment of Forfeiture (Doc. 812), as amended by the Government's Supplemental Memorandum (Doc. 839), is **GRANTED WITH MODIFICATION** and it is **FURTHER ORDERED THAT**:

(a) The Government is authorized and directed to disburse properties and monies to all Claim Petitioners to whom property or monies have been awarded in this ancillary forfeiture proceeding;

(b) The Government is only required to disburse properties or monies due to Claim Petitioners (1) based on a consent order issued by this Court (Docs. 708, 808, 838); (2) in the form of coins designated as non-contraband, such as the Ron Paul Dollar, the Hawaii Dala, and the Chiropractic Dollar (*See e.g.* Doc. 633 at 1, Doc. 633-1, Doc. 648, Doc. 721 at 1, Doc. 733 at 1-2, Doc. 741 at 2, Doc. 742 at 3-4, Doc. 743 at 2-3, Doc. 744 at 1-2, Doc. 745 at 2, Doc. 746 at 2, Doc. 750 at 2, Doc. 759 at 2, Doc. 760 at 2, Doc. 794 at 2-3, Doc. 801 at 3); or (3) who claim properties based on warehouse receipts after those Claim Petitioners have turned over original

warehouse receipts to the United States Attorney's Office, Western District of North Carolina, 100 Otis Street, Room 233, Asheville, North Carolina 28801;[4]

(c) Claim Petitioners who claim properties based on original warehouse receipts and who have not already turned-over their original warehouse receipts to the United States Attorney's Office must turn-over their original warehouse receipts on or before the **270th** day after issuance of this Final Order and Judgment of Forfeiture. If a claim petitioner fails to turn-over original warehouse receipts as directed herein on or before the **270th** day after issuance of this Order, the portion of the claim petitioner's petition based on those unproduced original warehouse receipts shall be deemed abandoned and the assets that the claim petitioner claimed based on the unproduced original warehouse receipts shall be finally forfeited to the United States by operation of law; and

(d) All properties and monies identified in the Third Preliminary Order of Forfeiture (Doc. 297) and not identified in this Court's subsequent orders resolving claim petitions, shall be finally awarded to the United States and the United States shall have clear title to such properties and monies for disposition by the United States, at its discretion, according to law.

Signed: August 4, 2017

Richard L. Voorhees
United States District Judge

---

[4] This Court concurs with the Government's suggestion that Claim Petitioners send original warehouse receipts to the United States Attorney's Office through a method of mailing that facilitates mail tracking and receipt confirmation, such as Certified Mail, Return Receipt Requested, or another similar mailing mechanism.